UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Jeffrey C. O'Neil

    v.                                                             Civil No. 09-cv-006-SM

James O'Mara, et al.[1]

## REPORT AND RECOMMENDATION

Before the Court is Jeffrey O'Neil's complaint (document no. 1), filed pursuant to 42 U.S.C. § 1983, alleging that the defendants have violated his rights under the United States Constitution during his incarceration at the Hillsborough County Department of Corrections ("HCDOC"). The matter is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the

---

[1] In addition to James O'Mara, O'Neil has named several other Hillsborough County Department of Corrections employees as defendants to this action.

magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id. This review ensures that pro se pleadings are given fair and meaningful consideration.

### Background

On November 26, 2008, Jeffrey O'Neil was a pretrial detainee at the HCDOC. On that date, he was in the sally port at the

HCDOC waiting to be escorted to the law library.  HCDOC Officer Higgins saw O'Neil standing there, and intentionally slammed a door into him, causing injury to O'Neil's toe.  After that, O'Neil claims, Higgins said "What the fuck are you looking at?"  O'Neil asserts that, although Higgins knew that he was injured, he did not do anything proactively to obtain medical attention for O'Neil.  As it appears that O'Neil did not, at that time, ask for medical assistance, none was immediately rendered.

Later, O'Neil's toe hurt, and he asked HCDOC Officer Fonnier if he could see a nurse.  At 5:00 p.m. that day, nine hours after his toe was hit by a door, O'Neil saw Nurse Joshua Plant from the HCDOC medical department.  Nurse Plant diagnosed O'Neil with a swollen toe, gave him ibuprofen, and told him that he would bring ice for him later that day.  Plant did not bring the ice until the next day, approximately twenty-four hours after the injury.

O'Neil spoke to HCDOC Sgt. Williams and stated that he wanted to press criminal charges against Higgins for assault.  HCDOC Lt. Martineau contacted dispatch at the Manchester Police Department.  Manchester Police Officer Jajuga came to the HCDOC to speak with O'Neil.  Upon speaking with O'Neil and Higgins, who admitted to accidentally hitting O'Neil with a door, Jajuga made

a determination that no assault had occurred and declined to charge Higgins with a crime.

The internal HCDOC investigation of this matter resulted in a finding that O'Neil's accusation of intentional assault, as well as his accusation that Higgins had used profanity or made derogatory comments to O'Neil, were unfounded. O'Neil accuses Higgins of criminal assault, and other HCDOC employees of engaging in a criminal conspiracy to cover up the assault. O'Neil attributes the cover-up to retaliation for a lawsuit he filed against HCDOC Superintendent James O'Mara.[2]

## Discussion[3]

I. Excessive Force Claim

O'Neil asserts that by intentionally hitting him with a door, Higgins used excessive force against him. The Fourteenth Amendment protects a pretrial detainee from excessive force that amounts to punishment. See Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st Cir. 2007); Surprenant v. Rivas, 424 F.3d 5, 18 (1st

---

[2] See O'Neil v. O'Mara, Civ. No. 08-cv-396-SM (D.N.H.) (filed Sept. 23, 2008).

[3] The claims as identified herein will be considered for all purposes to be the claims raised in the complaint. If O'Neil disagrees with this identification of the claims, he must do so by properly objecting to this Report and Recommendation.

4

Cir. 2005). In determining whether a plaintiff has stated a claim for unconstitutionally excessive force, the court should look to the following four factors: (1) the need for the use of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of injury inflicted, and (4) "whether the force was applied in good faith to maintain or restore discipline or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. Whether a use of force is objectively "harmful enough" to establish a constitutional violation is "contextual and responsive to 'contemporary standards of decency.'" Id. at 2 (quoting Estelle, 429 U.S. at 103)). While a plaintiff need not allege extensive injuries to state a constitutional claim, the Eighth Amendment protection against cruel and unusual punishment is not reached by de minimus uses of physical force. See Hudson, 503 U.S. at 2. The First Circuit has applied this standard to a case where an arrestee, rather than a convicted inmate, alleged excessive force. See Bastion v. Goddard, 279 F.3d 10, 15 n.7 (1st Cir. 2002) (injury of an arrestee "must be more than a de minimus injury and must be

evaluated in the context in which the force was deployed." (internal quotations omitted)).  I find that a swollen toe constitutes de minimus injury for purposes of constitutional analysis.  See Calabria v. Dubois, 23 F.3d 394, *2 (1st Cir. 1994) (finding that a single blow caused by a thrown object and resulting only in a bloody lip was "clearly de minimus" for Eighth Amendment purposes).

As O'Neil describes the incident, Higgins hit him with a door, for no reason and without provocation, on a single occasion, causing swelling to one of his toes.  Although Higgins reported that he hit O'Neil accidentally, I must credit O'Neil's version of events with the truth at this stage of the proceedings.  Accordingly, I will presume, for the purpose of conducting this preliminary review, that Higgins struck O'Neil intentionally.  Even so, I can find neither that the alleged use of force was significant enough, nor that the resulting injury was serious enough, to amount to punishment, and the allegations in the complaint do not, therefore, give rise to a constitutional claim.  Accordingly, I recommend that the excessive force claim be dismissed.

II. <u>Inadequate Medical Care</u>

O'Neil claims that the denial of ice for a period of 24-hours after his toe was injured constitutes constitutionally inadequate medical care. The constitution protects prisoners from prison officials acting with deliberate indifference to their serious medical needs. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 831 (1994). To assert a viable cause of action for inadequate medical care, a prisoner must first state facts sufficient to allege that he has not been provided with adequate care for a serious medical need. <u>Id.</u> at 831; <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>Estelle</u>, 429 U.S. at 106. The inmate must then allege that a responsible prison official was aware of the need, or of the facts from which the need could be inferred, and still failed to provide treatment. <u>Estelle</u>, 429 U.S. at 106. A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated. <u>Barrett v. Coplan</u>, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); <u>Kosilek v. Maloney</u>, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing <u>Farmer</u>, 511 U.S. at 835-47); <u>see</u> <u>also</u> <u>Gaudreault</u>, 923 F.2d at 208 (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention.") (internal citations omitted).

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations. United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987). This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy. Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco, 923 F.2d at 234. Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state. Wilson v. Seiter, 501 U.S. 294, 302 (1991).

Here, O'Neil states that, when he requested medical care he was given access to a nurse who diagnosed him and treated him with ibuprofen. O'Neil was provided with ice for his swollen toe, but not until the following day. I find that the injury was

not sufficiently serious to give rise to a constitutional right to medical care or to oblige the HCDOC defendants to do more than they did.  As these allegations do not suffice to allege a violation of O'Neil's constitutional rights, even considering his pretrial status at the time of the incidents alleged, I recommend that this claim be dismissed.

III. Failure to Bring Criminal Charges

O'Neil alleges that his rights have been violated by the failure of the Manchester Police Department to bring criminal charges against Higgins.  O'Neil has sued only HCDOC defendants, however, and not Officer Jajuga, who opted against initiating a criminal prosecution in this matter.  Even if Jajuga had, however, been sued by O'Neil for failing to bring criminal charges against a third party, no claim would lie.  There is no cause of action under § 1983 for the failure to prosecute a crime, as there is no federal constitutional right to have criminal wrongdoers brought to justice. See Leeke v. Timmerman, 454 U.S. 83, 87 (1982); Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non

prosecution of another.")).  I therefore recommend that any intended claim for the failure to prosecute Higgins be dismissed.

IV. Retaliation

O'Neil loosely asserts that the HCDOC is improperly retaliating against him, by covering up the alleged assault by Higgins, in response to a lawsuit plaintiff has previously filed against O'Mara.  O'Neil alleges no facts, however, which support the suggestion of a causal connection between the actions of defendants and any retaliatory intent, except the existence of another lawsuit.  Accordingly, I find that insufficient facts are stated to assert this claim and I recommend it be dismissed.

### Conclusion

I find that O'Neil has failed to state any claim upon which relief might be granted.  Accordingly, I recommend that the complaint be dismissed in its entirety.  See LR 4.3(d)(2)(A)(i).

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of

Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992);

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

/s/ James R. Muirhead
_____
James R. Muirhead
United States Magistrate Judge

Date:     March 18, 2009

cc:       Jeffrey C. O'Neil, pro se